## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| UMB BANK, N.A., in its capacity as successor trustee for the Bonds, *Plaintiff,* vs. D. JON MONSON, et al., *Defendants.* | Case No. 2:21-CV-2504-EFM-KGG |

## MEMORANDUM AND ORDER

Plaintiff UMB Bank, N.A., in its capacity as successor trustee for bonds issued by the City of Edwardsville, brought suit against Defendants D. Jon Monson, Compass Commodities Group III, LLC, 11 Water LLC, One10 HRKC LLC, and One10 Hotel Holdings LLC (collectively, "Defendants"), alleging violation of Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, violation of Section 20(a) of the Securities and Exchange Act, and two counts each of fraudulent inducement and negligent misrepresentation against all Defendants.  UMB Bank also asserts a breach of the Development Agreement by Compass and One10 HRKC.  Defendants now move to dismiss UMB Bank's Complaint in its entirety (Doc. 19).  For the reasons explained below, the Court denies the motion.

## I.      Factual and Procedural Background[1]

Sometime in 2018, Defendants sought to construct a Hard Rock Hotel and adjacent events center ("the Project") in the City of Edwardsville, Kansas, with the goal of opening the hotel on or before April 1, 2021.  The projected cost of the Project totaled approximately $80,000,000.  The Project was to be funded by a construction loan in the amount of $52,000,000 ("the Construction Loan"), a mezzanine loan in the amount of $3,100,000 ("the Mezzanine Loan"), and bonds issued by the City of Edwardsville in the amounts of $10,655,000 ("the TGT Bonds"), $11,005,000 ("the TIF Bonds"), and $1,620,000 ("the CID Bonds") (collectively, "the Bonds").  Plaintiff UMB Bank is the successor trustee for the Bonds.

On November 1, 2018, the City of Edwardsville entered into a development agreement with Defendant Compass.  That agreement was amended in August 2019.  Together, the original development agreement and the first amendment constitute the Development Agreement. According to the terms of the Development Agreement, the Bonds were not to issue until closing by Defendant One10 HRKC of the Construction Loan and the Mezzanine Loan.  Although the Bonds were scheduled to issue on October 15, 2019, the Bonds were not issued and delivered at that time because closings on the two loans had not yet occurred.

On October 30, 2019, Compass entered into a partial assignment with One10 HRKC.  Thus, Compass remained the "Developer" and One10 HRKC became the "Owner" of the Project.  The same day, One10 HRKC executed a loan agreement with AltosGroups, LLC ("Altos") for the Construction Loan.  After Compass and One10 HRKC informed the City of Edwardsville that the circumstances that had precluded the closing of the two loans had been resolved, the City of

---

[1] The facts are taken from Plaintiff's Complaint and are viewed in the light most favorable to Plaintiff.

Edwardsville issued the Bonds.  Known to Defendants, however, Altos had no funds to lend as Altos was a "warehouse lender" wholly reliant upon a third-party line of credit.

Under the loan agreement, Altos was required to advance loan proceeds to One10 HRKC no later than February 24, 2020.  But on March 6, 2020, Altos informed One10 HRKC that it was unable to advance funds under the loan agreement.  Without Altos' funding, construction on the Project halted, and One10 HRKC has since been unable to find a new lender.

Plaintiff now asserts that Compass and One10 HRKC (1) misrepresented to the City of Edwardsville that the Construction Loan had closed when, in fact, Altos was a "warehouse lender" with no funds to lend; (2) concealed that the Construction Loan Agreement with Altos was for a principal amount of $48,823,603, rather than the full $52,000,000 contemplated in the Official Statements; (3) misrepresented that they had satisfied the Down Payment Deposit prior to the issuance of the Bonds; (4) failed to disclose threatened and pending litigation against them despite representations in the Official Statements that they were not aware of any threats of litigation; and (5) misrepresented the amount of their owner contributions to the Project.  Plaintiff asserts that but for these misrepresentations, the City of Edwardsville would not have issued the Bonds.

Plaintiff brings the following claims:

**Count I:** Compass and One10 HRKC made the aforementioned misrepresentations in violation of Section 10(b) of the Securities and Exchange Act and Rule 10b-5 promulgated thereunder.

**Count II:** 11 Water and Monson directly or indirectly controlled the alleged activities of Compass and One10 HRKC that constitute violations of Section 10(b) of the Securities and Exchange Act and Rule 10b-5 within the meaning of Section 20(a) of the Securities and Exchange Act.

**Count III:** Defendants knowingly and recklessly made the above false and misleading misrepresentations with the purpose of fraudulently inducing issuance of the Bonds.

**Count IV:** Defendants negligently failed to disclose material facts and made material misrepresentations that influenced the Issuer to issue and the Bondholders to purchase the Bonds.

**Count V:** Defendants knowingly and recklessly failed to disclose material facts for the purpose of fraudulently inducing disbursements from the Trust Estates.

**Count VI:** Defendants negligently failed to disclose material facts and made material misrepresentations that influenced the prior trustee to disburse monies from the Trust Estates.

**Count VII:** Compass and One10 HRKC breached the Development Agreement.

Defendants move to dismiss all counts for failure to state a claim.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[2] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[3]   A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[4]   The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[5]

---

[2] Fed. R. Civ. P. 12(b)(6).

[3] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[5] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

Because Plaintiff brings claims for fraud and pleads the absence of conditions precedent, it must plead those allegations with particularity.[6]  In ruling on a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[7]

### III.    Analysis

Defendants argue that Counts I through VI should be dismissed for Plaintiff's failure to plead any viable material misrepresentations, or in the alternative, for failure to effectively plead that any such misrepresentations or omissions caused Plaintiff's alleged losses.  Defendants argue that Count VII should also be dismissed because Plaintiff is not a valid assignee of the Development Agreement.

As noted by Defendants in their Motion to Dismiss, Plaintiff's causes of action in Counts I through VI all rely on the same five alleged material misrepresentations or omissions.  Although Plaintiff brings its claims under Section 10(b) of the Securities and Exchange Act and under Kansas common law, the standards are substantially similar.  Rule 10b-5 provides:

> It shall be unlawful . . . [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, . . . in connection with the purchase or sale of any security.[8]

Similarly, fraudulent and negligent misrepresentation under Kansas law requires "(1) an untrue statement of fact, (2) known to be untrue by the party making it, made with the intent to deceive or recklessly made with disregard for the truth, (3) justifiable reliance on the statement to plaintiff's

---

[6] Fed. R. Civ. P. 9(b)-(c).

[7] *Iqbal*, 556 U.S. at 678–79.

[8] 17 C.F.R. § 240.10b-5(b).

detriment, (4) acts to plaintiff's injury, and (5) damage."[9]  Further, in Kansas, fraud by silence or omission occurs where:

> (1) defendant had knowledge of material facts which plaintiff did not have and which plaintiff could not have discovered by the exercise of reasonable diligence; (2) defendant was under an obligation to communicate the material facts to plaintiff; (3) defendant intentionally failed to communicate to plaintiff the material facts; (4) plaintiff justifiably relied on defendant to communicate the material facts to plaintiff; and (5) plaintiff sustained damages as a result of defendant's failure to communicate the material facts to plaintiff.[10]

**A.    Plaintiff has sufficiently alleged that Defendants had a duty to disclose that the Construction Loan was through a warehouse lender.**

Defendants first assert that they had no duty to disclose that the Construction Loan was through a warehouse lender.  Citing *New Jersey v. Sprint Corp.*,[11] Defendants assert that because there was not a statute or regulation that required disclosure, nor a fiduciary-type relationship, they had no independent duty to disclose that Altos was a warehouse lender.  But Defendants' argument misses the third scenario in which a party may have an independent duty to disclose: "when disclosure is necessary to make statements that have been made not misleading."[12]

Here, Plaintiff has alleged that the Official Statements provided that the Bonds were being issued on the condition that the Construction Loan had closed on or before the date of issuance.  It has further alleged that Altos' status as a warehouse lender affected the meaning of the statement that the loan had closed.  Plaintiff has therefore sufficiently pleaded that disclosure of Altos' status was necessary to make Defendants' statements regarding the closing of the loan not misleading.

---

[9] *Zhu v. Countrywide Realty, Co.*, 165 F. Supp. 2d 1181, 1201 (D. Kan. 2001) (citations omitted).

[10] *Id.* (citations omitted).

[11] 314 F. Supp. 2d 1119 (D. Kan 2004).

[12] *Id.* at 1128 (citation omitted).

-6-

**B.    Plaintiff has sufficiently alleged that there were misrepresentations regarding the amount of the Construction Loan.**

Defendants next argue that that there were no misrepresentations or omissions regarding the amount of the Construction Loan.  Essentially, Defendants argue that although the Official Statements listed the amount of the Construction Loan at $52,000,000, simple subtraction from the "Uses of Funds" portion of the Official Statements reveals that there was no misrepresentation regarding the *principal* amount of the loan.  But critically, this argument does not assert that Plaintiff failed to plead its claim.  Rather, Defendants make a factual attack on Plaintiff's claim, arguing that they did not in fact misrepresent the amount of the Construction Loan.  Although the Court may look to documents attached to the Complaint in considering a 12(b)(6) motion, the Court accepts as true all factual allegations not directly contradicted by the attached exhibits.[13] Viewing the Complaint and the attached exhibits in the light most favorable to Plaintiff, Plaintiff has plausibly alleged that Defendants misrepresented the amount of the Construction Loan.  The Court will not dismiss Plaintiff's claim on this basis.[14]

**C.    Plaintiff has sufficiently alleged that Defendants' misrepresentation regarding the closing of the Construction Loan caused the disbursement of funds that would not have otherwise been disbursed and lost.**

Defendants next assert that Plaintiff failed to allege how the delay in the Down Payment Deposit and closing proximately caused any loss to the Bondholders.

In response, Plaintiff argues that it alleged that $10 million in bond proceeds were disbursed before the Construction Loan closed, and that those proceeds would not have been

---

[13] *Estate of Ronquillo v. City & Cty. of Denver*, 720 F. App'x 434, 437 (10th Cir. 2017) (citations omitted).

[14] Defendants raise two additional arguments in their Reply brief, *see* Doc. 25, p. 11–13, but the Court will not address issues raised for the first time in a reply brief.  *See Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) (citation omitted).

disbursed had the prior trustee known that the true status of the Construction Loan.  Thus, it argues that Defendants concealed the risk that the Project might not be fully funded—a risk that materialized.

Defendants argue in return that Plaintiff improperly conflates the closing of the Construction Loan with the failure of the loan to fund.  They assert that there is no nexus between the delay in closing and Plaintiff's losses, which they argue was caused by the failure of the loan to fund.  Defendants further argue that because the loan eventually closed, the delay in closing cannot be the basis for Plaintiff's alleged losses.

The Court concludes that for purposes of a motion to dismiss, Plaintiff has met its burden.  Viewing the Complaint in the light most favorable to Plaintiff, it is plausible that Plaintiff's predecessor would not have disbursed the Bond proceeds had it known that the Construction Loan had not yet closed and, thus, the Bondholders would not have suffered the loss.  Although Defendants argue that because the failure to fund did not occur until over three months after the delayed closing, the delay did not actually cause Plaintiff's loss, these arguments are not appropriate at the pleading stage.  Plaintiff has sufficiently pled that this misrepresentation caused the loss.

**D.    Plaintiff has sufficiently alleged that Defendants should have known about threatened litigation against it.**

In its Complaint, Plaintiff alleged that Defendants failed to disclose threatened and pending litigation, despite language in the Official Statements representing that Compass and One10 HRKC were unaware of any threatened or pending litigation against them.  The three cases cited by Plaintiff in its Complaint are (1) *In re Stone Rose, LP v. Berg*, initiated in 2015; (2) *Cozen O'Connor v. Monson*, initiated in 2020; and (3) *Minnesota Bank & Trust v. 11 Water LLC*, initiated

in 2020.  Plaintiff alleged that *In re Stone Rose* involved allegations that Defendant Monson, his wife, and a Minnesota corporation owned by Monson, received fraudulent transfers from a real estate fund established by Monson's son-in-law.  *Cozen O'Conner* involved a law firm seeking legal fees from Defendant Monson and other family members in relation to the *Stone Rose* matter. Finally, *Minnesota Bank & Trust* involved an alleged default by Defendant 11 Water on a loan that was guaranteed by Defendant Monson.

First, Defendants argue that the Official Statements referred only to the Developer and Owner (Compass and One10 HRKC) and that none of these cases involved Compass or One10 HRKC.  Plaintiff has alleged, however, that Defendant Monson owns and controls both Compass and One10 HRKC, and that Defendant 11 Water is the managing member of Compass.  It further alleged that Monson executed a guaranty contemporaneously with the Bond issuance and that the Bondholders would not have purchased the Bonds had they known of 11 Water and Monson's inability or unwillingness to perform in accordance with their financial obligations.  Thus, Plaintiff has plausibly alleged that lawsuits against Monson and 11 Water could impact the issuance of the Bonds.

Next, Defendants argue that their failure to disclose the *In re Stone Rose* litigation did not constitute a misrepresentation regarding threatened or pending litigation because that matter settled in 2017.  The Court has reviewed Defendants' citation to Plaintiff's Complaint, however, and although Plaintiff's Complaint notes that the litigation was initiated in 2015, it does not allege that the case settled in 2017.  Further, Defendants fail to provide the Court with any proof of which the Court may take judicial notice establishing that the case settled prior to the signing of the Official Statements.  Thus, the Court cannot conclude that Plaintiff has failed to plausibly allege that the *In re Stone Rose* litigation was pending at the time of the Official Statements.

Defendants also argue that *Cozen O'Connor* and *Minnesota Bank & Trust* were not threatened or pending at the time of the Official Statements because they were filed months after the Official Statements were prepared.  But this argument must fail at the pleading stage as litigation can very well be threatened without a suit having been filed.

Finally, Defendants argue that they were under no duty to disclose because the disclosure did not contemplate litigation that may "impact" the issuance of the Bonds, but rather sought information on lawsuits that could restrain or enjoin the Development Agreement or the Owner Disclosure Agreement.  Again, however, Defendants do not argue that Plaintiff failed to meet the pleading standards but, rather, make a factual attack on Plaintiff's Complaint.  Because Plaintiff's factual allegations are not directly contradicted by its attached exhibits, the Court will not reject Plaintiff's claim on this basis.[15]

### E.    Plaintiff has sufficiently alleged that the Bondholders would not have purchased the Bonds had they known that Defendants intended to use cost certificates to recoup their owner equity.

Turning to Plaintiff's allegation that Defendants misrepresented Defendants' amount of "skin in the game" by failing to disclose that Defendants intended to recoup their predevelopment contributions via cost certifications, Defendants argue that the Official Statements did not require a specific timeline for Defendants to have contributed their owner-equity in the Project. Defendants further point to other portions of the Official Statements that they believe support their contention that there was no timeline under which they were required to contribute their owner equity.   Clearly, the parties dispute the timeline under which Defendants were required to

---

[15] *See Estate of Ronquillo*, 720 F. App'x at 437 (citations omitted).  Further, the Court notes that Defendants argue in their Reply that Plaintiff has failed to allege that Defendants' misrepresentations were the cause of the Bondholders' losses.  As noted above, however, the Court declines to address arguments raised for the first time in a reply brief.  *See Gutierrez*, 841 F.3d at 902 (citation omitted).

contribute their owner equity into the Project.  Once again, these disputes are ill-suited for the pleadings stage, and looking to Plaintiff's Complaint, Plaintiff has plausibly alleged that Defendants were required to contribute their equity prior to the issuance of the Bonds.

Defendants further argue that Plaintiff has not demonstrated how any alleged lack of owner-equity is the proximate cause of its alleged damages.  But Plaintiff has alleged that had the Bondholders known that multiple proposed sources of funds were uncertain—i.e., there was a risk the Project would be underfunded—they would not have invested in the Bonds.  It has further alleged that risk has materialized due to Defendants' failure to contribute their required equity, leaving the total source of funds available millions lower the amount needed.  That Defendants believe Altos' failure to fund the loan was the true cause of the Bondholders' losses is not relevant at this stage.  The Court again concludes that Plaintiff has met its burden.

**F.     Plaintiff has adequately pled that it is a valid assignee of the Development Agreement.**

In addition to its misrepresentation claims, Plaintiff brings an action for breach of the Development Agreement and seeks to enforce the Development Agreement.  Defendants argue that Plaintiff was not a party to the Development Agreement, is not a valid assignee, and therefore, Plaintiff does not have standing to bring an action against them.

Under Kansas law, "[a]n assignment passes all the assignor's title and interest to the assignee and divests the assignor of all right of control over subject matter of the assignment."[16] Defendants now argue (1) the assignment was not valid because the City of Edwardsville retained

---

[16] *Chamberlain v. Farm Bureau Mut. Ins. Co.*, 36 Kan. App. 2d 163, 137 P.3d 1081, 1090 (2006) (citing *Bolz v. State Farm Mut. Auto. Ins. Co.*, 274 Kan. 420, 52 P.3d 898, 904 (2002)).

rights for itself under the Development Agreement, and (2) the assignment materially changed the duties owed by them, making the assignment invalid.

First, Plaintiff has pleaded that the City of Edwardsville, as the issuer of the Bonds, assigned its rights under the Development Agreement to it. Defendants do not attack the sufficiency of Plaintiff's pleading but, instead, assert that Plaintiff's actions after-the-fact are inconsistent with total assignment. This argument is not appropriate at the pleading stage. Further, Defendants' argument that the assignment was invalid because it materially changed the duties owed by Defendants under the Development Agreement also delves into issues inappropriate for a motion to dismiss.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 19) is **DENIED.**

**IT IS SO ORDERED.**

Dated this 31st day of August, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE