## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| UMB BANK, N.A.,<br><br>        *Plaintiff/Counter-Defendant,*<br><br><br> vs.<br><br><br><br>D. JON MONSON; COMPASS COMMODITIES GROUP III, LLC; 11 WATER LLC; ONE10 HOTEL HRKC LLC; and ONE10 HOTEL HOLDINGS LLC,<br><br>        *Defendants/Counter-Plaintiffs,*<br><br>vs.<br><br>COLLIERS SECURITIES, LLC; and COLLIERS MORTGAGE, LLC,<br><br>        *Third-Party Defendants.* | Case No. 21-cv-2504-EFM-KGG |

## MEMORANDUM AND ORDER

Before the Court is Third-Party Defendants Colliers Securities, LLC's and Colliers Mortgage, LLC's (collectively "Colliers") Motion to Dismiss (Doc. 144) the claims brought against them by Defendants/Third-Party Plaintiffs D. Jon Monson ("Monson"), Compass Commodity Group III, LLC ("Compass"), 11 Water LLC ("11 Water"), One10 Hotel HRKC LLC ("One10 HRKC"), and One10 Hotel Holdings LLC ("One10 Holdings"). Defendants have alleged

an indemnification claim and a breach of contract claim against Colliers for actions undertaken by Dougherty Funding and Dougherty & Company, LCC (the "Dougherty Entities"), Colliers' predecessors in interest.  Both claims relate to a failed attempt to construct a Hard Rock Hotel and accompanying events center.  For the reasons stated below, the Court grants Colliers' Motion in part and denies it in part.

## I.     Factual and Procedural Background[1]

To build a new hotel and event center is an ambitious undertaking.  Numerous parties must participate, including owners, financiers, municipalities, underwriters, and developers.  This litigation involves many of the entities who unsuccessfully attempted to construct a Hard Rock Hotel in the City of Edwardsville, Kansas (the "City").

The City and Defendants began with the goal of opening a Hard Rock Hotel and adjacent events center (the "Project") on or before April 1, 2021. The projected cost of the Project totaled approximately $80,000,000.  The Project was to be funded by a construction loan in the amount of $52,000,000 ("the Construction Loan"), a mezzanine loan in the amount of $3,100,000 ("the Mezzanine Loan"), and bonds issued by the City of Edwardsville in the amounts of $10,655,000 ("the TGT Bonds"), $11,005,000 ("the TIF Bonds"), and $1,620,000 ("the CID Bonds") (collectively, "the Bonds").

In Fall 2018, Defendants engaged Dougherty Funding LLC to arrange financing for the Project.   Around the same time, the City hired Dougherty & Company LLC to serve as an

---

[1] The facts are taken from Defendants' Third-Party Complaint and are considered true for the purposes of this Order.

underwriter for the proposed Bonds.[2]  Both Dougherty Entites were subdivisions of the same company.  The Dougherty Entities were purchased by Colliers sometime after 2019, making Colliers the Dougherty Entites' successors in interest.

On September 25, 2019, Dougherty & Company sent a letter (the "Fee Agreement") to Defendants which purportedly "confirms your agreement to pay Dougherty & Company, LLC, a fee equal to 1.00% of the principal amount of the [Bonds] for its work in analyzing and structuring the [Bond]."  Defendants allege the Fee Agreement represents a contract between Dougherty & Company and themselves separate from any contract Dougherty & Company had with the City.

While working for both Defendants and the City, the Dougherty Entities made numerous misrepresentations to Defendants.  For example, the Dougherty Entities failed to disclose that the lender for the Construction Loan, AltosGroups, LLC, was a "warehouse lender" without power to confirm whether the Construction Loan would go through.  Instead, they represented that the Construction Loan had closed or was ready to close, a representation believed by Defendants until March 2020, when AltosGroups finally admitted it had no money to lend.  The Dougherty Entities also represented that Defendants needed to personally contribute $3 million in cash to AltosGroups' account.  The Dougherty Entities assured Defendants that the City would reimburse the $3 million.

On September 20, 2019, the City, One10 HRKC, and Dougherty & Company entered into Bond Purchase Agreements (the "BPAs") for each of the three Bonds.[3]  The BPAs defined the "Owner" as One10 HRKC and the "Underwriter" as Dougherty & Company.

---

[2] When referring to both Dougherty & Company and Dougherty Funding, this Order will employ the term "the Dougherty Entities."

[3] Having practically identical provisions, the Court will address the three BPAs together.

In the BPAs, the parties agreed that Dougherty & Company did *not* act as Defendants' agent or fiduciary and that every representation in the Bonds' "Official Statements" was Defendants' alone.[4]  Defendants allege, however, that each of the Official Statements were made or based on misinformation provided by the Dougherty Entities.

The BPAs also include an indemnification provision—Paragraph 10.  It mostly provides that both the City and One10 HRKC agreed to indemnify Dougherty & Company, with one notable exception.  Relevantly, Paragraph 10 states:

> The Underwriter agrees to indemnify and hold harmless . . . the Owner . . . with reference to . . . allegations or determinations that the Underwriter itself has violated the agreement set forth in Section 4(c) and the second paragraph of Section 5 hereof or the 1933 Act, the Securities Exchange Act of 1934, as amended, or any applicable state Blue Sky law in the offer or sale of the Bonds.

Much trouble ensued once the parties realized the Construction Loan would not be forthcoming.  On May 15, 2020, Plaintiff UMB Bank, N.A., mailed One10 HRKC a notice of default regarding the overall Development Agreement between the parties.  After Defendants failed to comply with its demands in the notice of default, UMB filed suit against all the Defendants on November 1, 2021.

Defendants filed a Third-Party Complaint against Colliers Securities, LLC, Colliers Mortgage, LLC on February 16, 2023.[5]  Defendants allege that the Dougherty Entities' failure to properly analyze and structure the Bonds and related financing damaged them.  The Dougherty Entities' failure directly led to AltosGroups failing to provide the necessary funding and

---

[4] UMB asserts its claims for fraud and misrepresentation against Defendants based on statements made and attributed to Defendants in the Official Statements.

[5] Defendants separately asserted various Counterclaims against UMB on April 11, 2023.

absconding with Defendants' money.  The ensuing lack of funding caused the wholesale failure of the Project.

In their Third-Party Complaint, Defendants assert two claims.  Count I alleges an indemnification claim for the Dougherty Entities misconduct, without specifying the source of Defendants' right to indemnification under Kansas law.  Count II alleges a breach of contract claim in regard to the Fee Agreement between Defendants and Dougherty & Company.

## II.      Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[6]  Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[7]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[8]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[9]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[10]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[11]  If the allegations in the

---

[6] Fed. R. Civ. P. 12(b)(6).

[7] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[8] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[9] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[10] *Iqbal*, 556 U.S. at 678–79.

[11] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' " [12]

When ruling on a Rule 12(b)(6) motion to dismiss, courts may "consider documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[13]  Should a conflict exist between allegations in a complaint and an attached exhibit, the exhibit controls.[14]

### III.    Analysis

### A.    Count I—Indemnification

Defendants first allege a claim for indemnification, which is a state law claim.[15]  Kansas law allows claims for three types of indemnification: "(1) express contractual indemnity; (2) implied contractual indemnity; and (3) comparative implied indemnity."[16]

> Express contractual indemnity arises where there is a contract of indemnity, such as a hold harmless agreement. Implied contractual indemnity arises when one is compelled to pay what another party ought to pay; generally, when a party without fault is made to pay for a tortious act of another and seeks indemnity from the party at fault . . . . Comparative implied indemnity is an equitable remedy available to a tortfeasor among other tortfeasors, who by settling with the plaintiff or paying a judgment, pays the other tortfeasors' share of liability.[17]

---

[12] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[13] *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (further citations and quotations omitted).

[14] *Id.* at 1105.

[15] *Unified Sch. Dist. 467 v. Leland A. Gray Architects, LLC*, 112 F. Supp. 3d 1223, 1228 (D. Kan. 2015) (applying Kansas law for indemnification claim).

[16] *Id.*

[17] *Id.* at. 1228–29 (further citations omitted).

To state a claim for implied contractual indemnity, the plaintiff must be without fault.[18] Furthermore, "Kansas courts appear to permit an implied contractual indemnity claim without reference to whether the underlying claim was brought in contract or tort."[19]  For an implied contractual indemnity claim to arise, the plaintiff must sufficiently allege a relationship with the defendant.[20]  For example, in *Unified Sch. Dist. 467 v. Leland A. Gray Architects, LLC*,[21] the Court found that a general contractor had plausibly alleged a claim for implied contractual indemnification based on two factual bases establishing an implied contractual relationship with a manufacturer.[22]  Namely, the general contractor alleged: "(1) the manufacturer was involved in the 'design and installation' and the 'inspection and service' of the HVAC systems and had made certain promises and affirmations in connection with the sale of the equipment and (2) the general contractor had purchased the HVAC units from the manufacturer's authorized dealer.[23]

The parties agree that comparative implied indemnity is not at issue.  Thus, the Court will address express and implied contractual indemnity in turn.

1.     *Express contractual indemnification*

Colliers first argue that Defendants fail to state a claim for express contractual indemnification under the BPAs.  Defendants rely on Paragraph 10 to establish Colliers' liability for indemnification, which states:

---

[18] *Water Dist. No. 1 of Johnson Cnty. v. S.J. Louis Constr., Inc.*, 2021 WL 5084180, at *6 (D. Kan. 2021) (quoting *Haysville U.S.D. No. 261 v. GAF Corp.*, 233 Kan. 635, 666 P.2d 192, 199 (1983)).

[19] *Id.*

[20] *See id.* at *7 (analyzing *Unified Sch. Dist. 467*, 112 F. Supp. 3d at 1225–28).

[21] 112 F. Supp. 3d 1223 (D. Kan. 2015).

[22] *Id.* at 1227–28.

[23] *Water District No. 1*, 2021 WL 5084180, at *7 (summarizing and quoting *Unified Sch. Dist. 467*, 112 F. Supp. 3d at 1227–28).

> The Underwriter agrees to indemnify and hold harmless . . . the Owner . . . with reference to . . . allegations or determinations that the Underwriter itself has violated the agreement set forth in Section 4(c) and the second paragraph of Section 5 hereof or the 1933 Act, the Securities Exchange Act of 1934, as amended, or any applicable state Blue Sky law in the offer or sale of the Bonds.

In their Third-Party Complaint, Defendants assert that the alleged misrepresentations or omissions that UMB alleges Defendants made really were misrepresentations by Colliers. Thus— in Defendants' view—UMB is suing Defendants based on Colliers's conduct, consequently invoking Paragraph 10's indemnification provision.

In contrast, Colliers argues that a proper interpretation of this provision is that UMB must have explicitly accused Colliers of unlawful conduct for Paragraph 10 to apply. The Court agrees with Colliers.

Paragraph 10 is not ambiguous. Colliers only indemnify Defendants "with reference to . . . *allegations or determinations that the Underwriter itself*" has committed wrongdoing. Facially, this provision only permits indemnification if the claims brought against Defendants allege Colliers' wrongdoing. If UMB's claims do not contain such allegations, then Colliers cannot be held liable to indemnify Defendants under Paragraph 10. It is rather silly to suppose that Colliers's duty to indemnify Defendants may be triggered by *Defendants' allegations* that Colliers violated the agreements and securities laws. That would be equivalent to requiring Colliers to indemnify Defendants for claims brought by Defendants against Colliers. This cannot be the intent of the parties, and a plain reading of Paragraph 10 does not support this interpretation.

Even though Defendants do not argue the point, it could be they rely on this Court "*determin[ing]* that the Underwriter itself" was at fault as the basis for their indemnification claim. This language would appear to allow Defendants to assert an indemnification claim against Colliers even if UMB had not specifically *alleged* that fault by the Dougherty Entities. However,

the simple fact is that no determinations have been made one way or the other.  UMB's lawsuit against Defendants is still ongoing.  Therefore, Defendants cannot state a claim for express contractual indemnity based on the foregoing contractual language.  Logically, this interpretation comports with Kansas caselaw stating that an indemnification claim itself is not ripe "until the indemnitee becomes obligated to pay, whether by judgment or settlement."[24]

Defendants have failed to allege facts which tie Paragraph 10's indemnification provision to this case.  Accordingly, the Court finds that Defendants have failed to state a claim for express contractual indemnification.

### 2.      *Implied contractual indemnification*

It is practically impossible to discern whether Defendants in their Complaint also intend to state a claim for implied contractual indemnification.  In their Response, however, Defendants rely solely on the Paragraph 10 as the basis for their right to indemnification from Colliers.  Colliers note this fact in their Reply, and Defendants have not moved for leave to file a sur-reply to address any potential misunderstanding.  However, Defendants also try to step outside the BPAs by roping in Dougherty Funding—an entity never mentioned in the BPAs—as also liable to them for indemnification.

Still, even in arguing that Dougherty Funding should be included as a Third-Party Defendant here, Defendants solely rely on Paragraph 10 for their right to indemnification from Dougherty Funding.  In other words, Defendants' argument seeks only to extend their express contractual indemnification claim to Dougherty Funding.  This is not the same as asserting an implied contractual indemnification claim.  Thus, the Court concludes that to the extent

---

[24] *Med James, Inc.*, 61 P.3d at 94.

Defendants' Compliant may have alleged any implied contractual indemnification claim, Defendants have abandoned that claim by failing to substantively respond to Colliers' Motion.[25]

Because Defendants fail to state a claim for express contractual indemnity and abandon any potential claim for implied contractual indemnity, the Court grants Colliers' Motion as to Defendants' Count I.

**B.     Count II—Breach of contract**

Defendants' second claim against Colliers is for breach of contract as to the Fee Agreement.  The Fee Agreement itself is a single page letter to Defendants which "confirms your agreement to pay Dougherty & Company a fee equal to 1.00% of the principal amount of the above captioned bonds for its work in analyzing and structuring the captioned bond issue."  Defendants allege that Dougherty & Company breached the Fee Agreement by failing to properly analyze and structure the Bonds.

The elements for a breach of contract under Kansas law are: "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach."[26]

---

[25] *See Tronsgard v. FBL Fin. Grp., Inc.*, 312 F. Supp. 3d 982, 1009 (D. Kan. 2018) ("And, more importantly, plaintiffs don't respond substantively to defendants' argument that Kansas law bars plaintiffs' rescission claim.  The court thus assumes that plaintiffs have abandoned their request for rescission."); *see also Hinsdale v. City of Liberal*, 19 F. App'x 749, 768–69 (10th Cir. 2001) (affirming district court's determination that plaintiff abandoned his equal protection claim by failing to address it in his response to defendant's motion for summary judgment); *see also Benge v. United Parcel Serv., Inc.*, 2022 WL 7484632, at *4–5 (D. Kan. 2022) (acknowledging *Tronsgard* and *Hinsdale* as supporting assumption of abandonment when plaintiff completely fails to defend a claim); *accord Cloud v. Wormuth*, 2023 WL 4745730, at *10 (E.D. Okla. 2023) ("Courts may presume that a party abandons its claims by failing to substantively address it when opposing [dispositive motions].").

[26] *Stechschulte v. Jennings*, 297 Kan. 2, 298 P.3d 1083, 1098 (2013).

"Contract interpretation is a question of law."[27]  Under Kansas law, "[t]he primary rule for interpreting written contracts is to ascertain the parties' intent."[28]  Kansas law "favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided."[29]  When contract terms are clear, courts must determine the parties' intent from the contract's language alone instead of utilizing rules of construction or considering extrinsic evidence.[30]

In construing a contract, and determining whether contractual language is ambiguous, courts applying Kansas law must consider the contract in its entirety, i.e., "from its four corners."[31] Extrinsic or parol evidence is only available to construe ambiguous language in a contract.[32] Nevertheless, "[t]he question of whether the language in a written contract is ambiguous is one of law for the court."[33]  Whether the parties themselves believe there is any ambiguity is immaterial.[34] Finally, "[w]here two or more instruments are executed by the same parties at or near the same time in the course of the same transaction and concern the same subject matter, they will be read and construed together to determine the intent of the parties."[35]

---

[27] *See Johnson v. Heath*, 56 F.4th 851, 863 (10th Cir. 2022) (further citation and quotations omitted); *see also Waste Connections of Kan., Inc. v. Ritchie Corp.*, 296 Kan. 943, 298 P.3d 250, 264 (2013).

[28] *Waste Connections*, 298 P.3d at 264 (quoting *Osterhaus v. Toth*, 291 Kan. 759, 249 P.3d 888, 896 (2011)).

[29] *Id.* at 265 (further citations and quotations omitted).

[30] *Id.* at 264.

[31] *Id.* (further citations and quotations omitted).

[32] *See id.* at 265.

[33] *Id.*

[34] *See id.*

[35] *City of Arkansas City v. Anderson*, 242 Kan. 875, 752 P.2d 673, 679 (1988) (quoting *Hall v. Mullen*, 234 Kan. 1031, 678 P.2d 169, 170 (1984)).

Colliers cite to *Greer v. City of Wichita*[36] to argue that Defendants fail to allege the minimum detail to support their claim.  In *Greer*, the Court dismissed a breach of contract claim because of insufficient factual allegations in the plaintiff's complaint.[37]  The plaintiff did not even allege "the existence of contract and the way in which its terms were breached."[38]  The total lack of factual allegations was insufficient under Fed. R. Civ. Proc. 8 to state a breach of contract claim.[39]  The Court noted, however, a plaintiff can "describe the alleged terms of the contract in a sufficiently specific manner to give the defendant notice of the nature of the claim" in any of three ways: "(1) quote relevant contract language, (2) attach a copy of the contract, or (3) summarize the contract's purported legal effect."[40]

Here, Defendants allege that Dougherty & Company failed to properly analyze and structure the Bonds.  In support of this claim, Defendants attached the Fee Agreement to their Third-Party Complaint, which explicitly states that Dougherty & Company agreed to perform "work in analyzing and structing the captioned bond issue."  This is a far cry from *Greer* where the plaintiff failed to even allege the existence of a contract, much less attach one to the complaint.

In arguing for dismissal of Count II, Colliers attempt to construe the Fee Agreement as merely restating a contract between the City and Dougherty & Company, which did not create any new duties on the part of Dougherty & Company.  To reach this conclusion, Colliers step outside of the pleaded facts of Defendants.  Defendants, however, allege that they hired Dougherty &

---

[36] 2017 WL 1492937 (D. Kan. 2017)

[37] *Id.* at *6

[38] *Id.*

[39] *Id.*

[40] *Id.* (further citation and quotations omitted).

Company in a separate capacity outside of the City's contract with it.  Accepting all of Defendant's pleaded facts as true, the Court concludes that the Fee Agreement represents a contract between Defendants and Daughter & Funding separate and distinct from Dougherty & Company's contract with the City.

Colliers also contend that any contractual relationship between Defendants and Dougherty & Company is precluded by provisions of the BPAs specifically stating that the latter were *not* the former's agents or fiduciaries.  Construing the BPAs and the Fee Agreement together—something not immediately suggested by Defendants allegations because it is not clear they were executed at the same time—would create conflicting contractual provisions.  This conflict and the resulting ambiguity would be improper for resolution on a motion to dismiss.  Furthermore, the guiding principle under Kansas law that the Court should restrict its analysis to the "four corners" of the Fee Arrangement itself stands against construing the Fee Agreement together with the BPAs.

However, the terms "analyzing and structuring" do not make clear exactly what functions Dougherty & Company agreed to perform regarding the Bonds.  The Court concludes that this language is ambiguous, requiring extrinsic evidence of the contracting parties' intent to determine its meaning.  Defendants allege that under the Fee Agreement, Dougherty & Company had an obligation to provide accurate analysis of all relevant statements of fact underlying the Bonds.  They also had the responsibility to structure the Bonds and the underlying financing for Defendants' benefit.  Accepting all of Defendants' allegations as true, Dougherty & Company breached these obligations by—among other things—failing to provide accurate analysis of the Bonds, misrepresenting AltosGroups' ability to provide the Construction Loan, and pressuring Defendants into paying money into AltosGroups' account.  Dougherty & Company also failed to properly  analyze  and  structure  the  bonds  when  they  provided  each  of  the  material

misrepresentations that Defendants included in the Official Statements.  Thus, for the purposes of this Order, Defendants have sufficiently stated a claim for breach of the Fee Agreement against Colliers.  Colliers' Motion as to Count II is denied.

**IT IS THEREFORE ORDERED** that Colliers' Motion to Dismiss (Doc. 144) is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Count I is **DISMISSED**.

**IT IS SO ORDERED.**

Dated this 13th day of September, 2023.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE