UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UMB BANK, N.A., solely in its capacity as successor trustee for the TGT, TIF, CID indenture bonds,<br><br>      Plaintiff,<br><br>      v.<br><br>D. JON MONSON, et al.,<br><br>      Defendants/Third-Party Plaintiffs.<br><br>      v.<br><br>COLLIERS SECURITIES, LLC and COLLIERS MORTGAGE, LLC,<br><br>      Third-Party Defendants. | Case No. 21-2504-EFM-BGS |

**MEMORANDUM AND ORDER GRANTING**
**MOTION TO AMEND COMPLAINT**

Now before the Court is Plaintiff's motion for leave to file a first amended complaint and join additional defendants. Doc. 184. Plaintiff UMB Bank files this motion within the deadline set forth in the third revised scheduling order. *See* Doc. 180. Defendants D. Jon Monson, et al. oppose the Motion because of undue delay and they claim the proposed amendment would cause them undue prejudice. As more fully set forth below, the Court **GRANTS** the motion.

**I.   Background**

This case centers around the stalled development of a hotel and events center in Edwardsville, Kansas (hereinafter "the Project"). Plaintiff is the successor trustee to three bond indentures. The named Defendants, D. Jon Monson, 11 Water LLC, Compass Commodity Group III, LLC, One10 Hotel HRKC LLC, and One10 Hotel Holdings LLC (collectively, "Defendants"), are an individual and four entities who planned to construct the hotel at issue. Defendants entered

1

into a development agreement with the City of Edwardsville and attempted to secure funding through a combination of a construction loan, owner-contributed equity, and bonds.

In August 2018, Defendant One10 Holdings engaged an entity known as Dougherty Funding LLC (which ultimately became "Colliers Mortgage, LLC") to arrange financing for the Project. In or around November 2018, the City engaged an entity known as Dougherty & Company LLC (which ultimately became "Colliers Securities, LLC") to serve as underwriter for the three Bonds.[1] In September 2019, Defendants also engaged Dougherty & Company as their agent to handle the Bonds from their side of the transaction. The contract, dated September 25, 2019, provides that the Third-Party Defendant (ultimately Colliers) was to receive "a fee equal to 1.00% of the principal amount of the [Bonds] for its work in analyzing and structuring the captioned bond issue." Doc. 111, at 3. Thus, Third-Party Defendant is alleged to have been "orchestrating the Bonds for both the Issuer and Defendants." Doc. 111, at 2-3.

For reasons that are disputed between the parties, the funding for the hotel project never materialized which halted development of the hotel.[2] Plaintiff is the successor trustee to the bonds and seeks reimbursement thereof. Plaintiff brings several claims against the Defendants alleging that they made fraudulent or negligent misrepresentations to secure the bonds and for breach of the development agreement. Defendants contend they were defrauded when the construction loan they had secured was unable to be funded by the lender.

---

[1] The Colliers entities consist of a mortgage company and separate securities company that were previously named "Dougherty Funding" and "Dougherty & Company," respectively, prior to the entities being purchased by Colliers. *See* Doc. 111, at 2, fn.1, fn.2. For the sake of clarity, the Court will refer only to these entities as Colliers (or "Third-Party Defendant") although certain briefing in this case references the Dougherty entities.

[2] Defendants contend they thought all three types of financing were secured before the October 30, 2019, closing ("Closing"). According to Defendants, however, by March 2020, the lender for the Construction Loan, AltosGroups LLC, indicated it had no lending funds ("Construction Loan Default"), which Defendants allege is when they learned that they had been defrauded. *See* Doc. 111, at 2.

On June 18, 2020, Defendant One10 HRCK filed suit against the bond trustee in the Circuit Court of Jackson County, Missouri, Case No. 16-13533 ("Missouri Action"). Plaintiff subsequently filed the present federal court action on November 1, 2021, related to

> making material misrepresentations in and omitting material facts from the Official Statements used to market and sell the Bonds, including misrepresentations about (a) the lender for and status of other financing for the Project, (b) litigation threatened against certain Defendants, and (c) Defendants' efforts to obtain reimbursement for Project expenses that were to be contributed by the Owner and/or Developer. [Plaintiff] UMB asserted causes of action under the Securities and Exchange Act, as well as common law claims, for intentional and/or negligent misrepresentations to induce issuance of the Bonds (Counts I-IV); fraudulent inducement and negligent misrepresentation for Defendants' efforts to obtain funds from the Trust Estates via Certification Nos. 1 and 2 (Counts V-VI); and, breach of the Development Agreement against Compass and One10 HRKC for, among other things, their inability to complete the Project, fraudulently and/or negligently submitting Certification Nos. 1 and 2, failing to meet Performance Milestones, and suspending efforts to construct the Project (Count VII).

Doc. 185, at 2 (citing Doc. 1).

The case has progressed very slowly since its filing. Defendants filed a Motion to Dismiss all of Plaintiff's claims on January 26, 2022, which was denied by the District Court on August 31, 2022. Docs. 19, 53. Defendants subsequently filed their Answer on September 14, 2022, generally denying Plaintiff's allegations. Doc. 58. Discovery in the case then began to progress, involving numerous third-party subpoenas and multiple discovery hearings with subsequent orders. *See* Docs. 35-38, 45-48, 64, 65, 67, 70, 72, 73, 83, 85-88, 93, 96, 97, 105, 108, 109, 112-115, 212, and 122; *see also* Docs. 78, 100.

On February 9, 2023, Defendants filed an unopposed motion for leave to file a Third-Party Complaint against current Third-Party Defendants Colliers Securities, LLC and Colliers Mortgage, LLC (collectively referred to as "Colliers" or "Third-Party Defendants"). Doc. 110. Therein, Defendants argued that they had "recently learned of causes of action against the Colliers . . . after a recent review of pleadings in a separate litigation, . . . gathering documents to produce to Plaintiff, . . . preparing Defendants' December 12, 2022, interrogatory responses, . . . preparing

3

Defendants for the December 14, 2022, mediation, and . . . preparing non-party Matthew Stoen for his January 19, 2023, deposition." Doc. 111, at 1-2.  In that unopposed motion for leave to file Third-Party Complaint, Defendants contend that:

> A promotional document for each Bond, called an 'Official Statement,' was prepared. Each Official Statement contained information about the Project, financing for the Project, and information about Defendants.  Defendants had little or no experience in property developments that had a public financing component.  The [Third-Party Defendant] knew this, and represented themselves as experts in the area of bonds and public financing for developments such as the Project.  Defendants thus reasonably relied on the [Third-Party Defendant] to make proper disclosures and to otherwise properly perform all functions related to the Bonds.
>
> Plaintiff's [original] Complaint [includes] allegations against Defendants of alleged misrepresentations or omissions regarding what was contained in the three Official Statements and other documents called Cost Certifications.  Through Defendants' contract with [Third-Party Defendant], the latter prepared the Official Statements for Defendants.  Defendants reasonably trusted and relied that [Third-Party Defendant] was making all the proper disclosures.

*Id.*, at 3.

This unopposed motion was granted by text order dated February 13, 2023.  Doc. 116.  The Order cancelled all current deadlines set forth in the then-operative Scheduling Order.  *Id.*  The Court indicated it would set a new scheduling conference after the new parties have been served and entered their appearances in this case.  *Id.*  The Third-Party Complaint was filed February 16, 2023.  Doc. 119.

Defendants next filed their Motion for Leave to File Amended Answer and File Counterclaims on February 13, 2023.  Doc. 117.  Defendants contended they learned facts "giving rise to an additional affirmative defense and counterclaims regarding Plaintiff's refusal to allow Defendants to continue with the Project" and "only recently learned of Plaintiff's misuse of … Bond funds" through a public records request.  Doc. 118, at 1-2.  Plaintiff's initial opposition to that motion was subsequently withdrawn pending Defendant One10 Hotel HRKC LLC dismissing the Missouri Action.  Doc. 138.  *See also* Doc. 139 (granting motion to amend answer and assert

4

counterclaims). After the Court granted Defendants' motion (Doc. 139 text order), Defendants filed their First Amended Answer and Counterclaim on April 11, 2023.[3] Doc. 140. The Pleading added an affirmative defense, additional facts, and eight counterclaims, three of which were migrated from the Missouri Action.

On April 28, 2023, Third-Party Defendants Colliers moved to dismiss the third-party complaint, Doc. 144, followed by Plaintiff moving to dismiss the counterclaims, Doc. 152, on May 23, 2023.[4] The District Court granted in part and denied in part both motions to dismiss on September 13, 2023. Docs. 167, 168. Colliers and Plaintiff filed their Answers on October 11, 2023. Docs. 176, 177.

Thereafter, the Court commenced a Scheduling Conference with the parties. Docs. 169, 179. During the Scheduling Conference, the parties collectively requested a new motion to amend deadline given that Colliers had been added as a Third-Party Defendant after the prior deadline expired. Also, Plaintiff indicated that it had been reviewing the document production and was in receipt of third-party subpoenaed documents, which could lead them to seek leave to amend. No party objected to resetting the motion to amend deadline. The Third Revised Scheduling Order was then entered on October 25, 2023, which included, in part, a deadline of January 10, 2024, for filing motions for leave to join additional parties or amend the pleadings. Doc. 180.

---

[3] The pleading includes the following counterclaims: tortious interference with and breach of Development Agreement for "failing to allow Counterclaim Plaintiffs to complete the Project" by refusing reimbursement or considering alternative financing proposals (Counts I-II); breach of TGT Guaranty (Count III) and implied covenant of good faith and fair dealing (Count IV) by "using the TGT funds to cover the expenses of the other Bonds" and "incurring unreasonable costs and expenses by using the TGT funds to pay for the enforcement of the alleged rights of the other Bonds"; breach of TIF Trust Indenture (Count V) and implied covenant of good faith and fair dealing (Count VII) for failing to distribute funds requested in Certification No. 3; and, breach of TGT Trust Indenture (Count VI) and implied covenant of good faith and fair dealing (Count VIII) for failing to distribute funds requested in Certification No. 3. *See* Doc. 140 at 51-64.

[4] Because of the filing of these dispositive motions, the Court did not immediately enter a new Scheduling Order as anticipated in the February 13, 2023, text order.

Plaintiff timely filed the present motion on January 10, 2024, seeking leave to amend its Complaint almost two and a half years after the action was initiated. Doc. 184. Plaintiff seeks to (1) "delete" the causes of action asserted under the Securities and Exchange Act (Counts 1 and 2); (2) add significant factual allegations to certain causes of action included in the original complaint; (3) add causes of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and (4) add 13 defendants under the RICO claims. *See generally*, Doc. 185-2.

Defendants oppose Plaintiff's motion, arguing that the proposed amendment would "effectively reimagine the litigation" into a RICO case rather than the original Securities and Exchange Act claims initially plead. Doc. 193, at 2. They continue that Plaintiff had the information underlying the proposed amendments no later than February 2023, almost a year before the motion was filed. *Id.*, at 7-8. According to Defendants, the delay in bringing the present motion is undue and granting the requested amendment would be unduly prejudicial to them. In their response, Defendants provide:

> Plaintiff's stated rationale for seeking this change is discovery that Plaintiff has had in its possession for, at a minimum, almost a year. When this undue delay is combined with the prejudice that would befall Defendants should Plaintiff be allowed this amendment, there are ample grounds for this Court to deny Plaintiff's Motion for Leave to Amend.

*Id.*

Plaintiff explains that the delay in filing the present motion was not undue because

> this litigation relates to a fraudulent scheme, [it] was not aware of all misrepresentations, omissions, and improper acts at the time it filed the original Complaint. After filing this litigation, [Plaintiff] identified additional wrongful conduct (through discovery that uncovered certain events pre-dating this lawsuit and also due to events that did not occur until after filing), additional entities and individuals involved in the scheme, and additional causes of action related to the scheme.

Doc. 185, at 2. According to Plaintiff, the delay in filing the present motion was unavoidable "given the volume of documents reviewed and the complexity of the web of deceit that had to be unraveled before [Plaintiff] (1) realized that Defendants' fraud far exceeded the allegations of fraud and

6

misrepresentation in its Original Complaint; and (2) could plead its new claims with the required particularity." Doc. 195, at 4.  Plaintiff points to the considerable time needed to review 90,000+ documents to put the pieces of the puzzle together for the alleged fraudulent scheme under RICO.

As of the filing of Plaintiff's motion, only one deposition had occurred, experts had not been disclosed, and a trial date had not yet been set.  Subsequent to the filing of the present motion, the Court canceled all then-pending scheduling deadlines and indicated new deadlines would subsequently be reset.  Doc. 192.

II.     **Standards for Motions to Amend.**

Federal Rule of Civil Procedure 15(a)(1) permits a party to amend its pleading once as a matter of course, either before the responding party answers or within 21 days after service of a responsive pleading.  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  As an initial matter, the Court notes that Plaintiff was given a deadline of January 10, 2024, to file the present motion.  While the motion was timely filed, Plaintiff must still establish that it is entitled to leave from the Court to amend.

It is well-settled that in ruling on a motion for leave to amend, courts are instructed to freely give leave when justice so requires.  *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962).  *See also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  In freely allowing leave to amend, the court provides litigants with "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."  *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982).  A court should only deny leave to amend for reasons such as undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, and futility of amendment.  *Foman*, 371 U.S. at 182; *Cohen v. Longshore*, 621 F.3d 1311 (10th Cir. 2010).  The party opposing the motion bears the burden to

demonstrate why the amendment should not be permitted. *Painter v. Midwest Health, Inc.*, No. 19-2336-DDC-ADM, 2020 WL 5016878, at *3 (D. Kan. Aug. 25, 2020) (citing *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010)).

As discussed above, Defendants raise the issues of undue delay and undue prejudice as the bases for their opposition to Plaintiff's motion. Because the alleged prejudice to Defendants is intertwined with the delay in filing the motion, the factors will be discussed together.

### III. Analysis

#### a. Plaintiff's Delay was Justified.

Defendants contend that the motion should be denied because Plaintiff's delay in bringing the proposed amendment is undue. Doc. 193, at 5. Defendants contend that the information underlying Plaintiff's proposed amendment was contained in discovery that "was gathered by Plaintiff, at minimum, eleven months before Plaintiff moved for leave to amend, and in most cases well over a year before." *Id.*, at 7. Defendants also argue that Plaintiff was remiss in not moving to amend during the extended "down time" in this case necessitated by Defendants seeking leave to bring their third-party Complaint against the Colliers (and the Colliers' resulting Motion to Dismiss) as well as Defendants seeking leave to file an amended Answer and Counterclaims against Plaintiff (and Plaintiff's resulting Motion to Dismiss). *Id.*, at 9-10.

Plaintiff, however, contends that it "acted with diligence and good faith" regarding the proposed amendment. Doc. 185, at 10. While acknowledging the delay in moving to amend, Plaintiff argues that the delay was not undue because

> it took time to review and analyze the productions from Defendants and non-parties, as well as public records related to the Project, pleadings and motions from other civil litigation filed by or involving Defendants, and filings related to the criminal trial of Mr. Stoen; research potential new claims and parties involved; and, uncover the broader scope of the fraudulent scheme through new information obtained after filing because, as is no surprise, Defendants have not proactively and clearly outlined all misrepresentations, omissions, and improper acts to date.

8

*Id.*, at 10-11.  Plaintiff continues that it has been "simultaneously prosecuting and defending multiple lawsuits all related to the now defunct Hotel Project – some of which directly impacted the claims raised in the Proposed Amended Complaint – while attempting to conduct an in-depth analysis of the document production, which included, among other things, 21 non-party subpoenas comprising over **90,000 bates-labeled pages**."  Doc. 195, at 4 (emphasis in original).  As a result, Plaintiff contends it "did not have 'an abundance of down time' but moved as swiftly and diligently as it could to understand and plead" its case.  *Id.*  The Court agrees.

In this case, the motion was filed within the Court's scheduling deadline.  Filing a motion to amend within that deadline is generally regarded as evidence that the delay was not undue.  *See Phase v. Eisenberg*, No. 122CV00035DBBJCB, 2023 WL 5046809, at *2 (D. Utah Aug. 8, 2023); *see also Topolski v. Chris Leef Gen. Agency Inc.*, No. 11-2495-JTM-KMH, 2012 WL 3889100, at *1 (D. Kan. Sept. 7, 2012) (granting leave to amend and recognizing that the motion was timely).  Moreover, the knowledge of the facts justifying the amendments were gained after the start of the litigation and required reasonable investigation.  *United Stats ex rel. Schroeder v. Medtronic, Inc.*, No. 17-2060-DDC-KGG, 2022 WL 1658865, at *5 (D. Kan. May 25, 2022) (holding that there is not undue delay "when knowledge of the facts behind the new claim is gained only after recent discovery and then confirmed after a reasonable investigation").  Plaintiff indicates that it has conducted a diligent investigation to ensure the facts could justify the proposed amendments.  Furthermore, the proposed amended complaint shows a series of complicated transactions and legal theories involving fraud on the part of the Defendants.  When alleging fraud, a party is held to a heightened pleading standard in which allegations must be stated with particularity.  *See* Fed. R. Civ. P. 9(b).  Given the voluminous nature of the documents reviewed by the Plaintiff as well as the complexity of the case and level of detail required to muster a plausible claim, the Court finds that an extended investigation was warranted.  Accordingly, the delay is not undue.

### b. The Prejudice to Defendants is Not Undue.

The "most important, factor in deciding a motion to amend the pleadings" is whether Plaintiff's proposed amendments would cause undue prejudice to Defendants. *Minter v Prime Equip Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006). "Courts typically find prejudice only when the amendment unfairly affects the [opposing parties] 'in terms of preparing their defense to the amendment.'" *Id.*, at 1208. "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the [original pleading] and raise significant new factual issues." *Id. See also Ngiendo v. Univ. Partners, LLC*, No. 20-2393-HLT-TJJ, 2022 WL 103283, at *2 (D. Kan. Jan. 11, 2022).

Defendant's response to Plaintiff's motion argues that the proposed amendment would "effectively reimagine the litigation" into one predominantly featuring RICO claims rather than the Securities and Exchange Act claims initially brought by Plaintiff. Doc. 193, at 2. According to Defendants:

> Plaintiff's stated rationale for seeking this change is discovery that Plaintiff has had in its possession for, at a minimum, almost a year. When this undue delay is combined with the prejudice that would befall Defendants should Plaintiff be allowed this amendment, there are ample grounds for this Court to deny Plaintiff's Motion for Leave to Amend.

*Id.*

The Court acknowledges that the proposed amendments may change this litigation for Defendants. "While any amendment invariably causes some 'practical prejudice,' undue prejudice means the amendment 'would work an injustice' to [Defendants]." *Bank Midwest v. R.F. Fisher Elec. Co. LLC*, No. 19-2560-JAR-GEB, 2021 WL 38008, at *5 (D. Kan. Jan. 5, 2021). That stated, a proposed amendment "must not be viewed in a vacuum that considers only the impact on Defendants." *Tran v. County of Douglas*, No. 21-2310, 2022 WL 1102653, *4 (D. Kan. April 13, 2022). "Virtually any litigation-related position or action by an opposing or non-aligned party has the

10

potential to be prejudicial to other parties." *Team Indust. Servs., Inc. v. Zurich American Ins. Co.*, No. 19-2710-HLT-KGG, 2021 WL 492882, *4 (D. Kan. Feb. 10, 2021).

> Litigation is, in and of itself, a prejudicial process. Virtually any litigation-related position or action by an opposing party has the potential to be prejudicial to other parties. The issue herein is not whether Defendants will be prejudiced, but whether the prejudice incurred by Defendants is undue. Given the nature of Plaintiff's claims and the issues in dispute in this lawsuit, the Court finds that the prejudice to Defendants is not undue, particularly in the context of the importance of Plaintiff's proposed claims.

*Tran v. County of Douglas*, 2022 WL 1102653, at *4.

Defendant argues that "[g]iven the abrupt change in Plaintiff's claims (dropping the Securities and Exchange Act claims and replacing them with the RICO claims), much of [the] discovery [already completed in this case] would be irrelevant and a whole new set of written discovery would need to be completed." Doc. 193, at 12. Defendants continue that Plaintiff's operative claims are, by and large, "predicated on what Plaintiff has alleged were misrepresentations and/or omissions contained within the Official Statements. Defendants' Third-Party Complaint against the Colliers Entities (Doc. 119), in turn, is largely predicated on Colliers' preparation of those Official Statements on behalf of Defendants." Doc. 193, at 12-13.

On a related note, Defendants also point to the effort and expense they incurred in filing their Motion for Leave to file their Third-Party Complaint against the Colliers and in drafting that Third-Party Complaint. Doc. 193, at 13. According to Defendants,

> [o]nce that Third-Party Complaint was filed, Defendants then incurred substantial time and expense opposing Colliers' motion to dismiss that Third-Party Complaint, which also included a motion for reconsideration. Should Plaintiff be allowed to amend and thus drop nearly all reference to the Official Statements in its new claims, Defendants would likely be required to spend significant time and resources to amend their Third-Party Complaint to reflect Plaintiff's new causes of action. This, presumably, would result in Colliers again moving to dismiss that putative new Third-Party Complaint, which would again require Defendants to incur substantial time and resources opposing Colliers' motion to dismiss a second time.

11

*Id.* However, "[t]he expenditure of time, money, and effort alone is not grounds for a finding of [undue] prejudice." *Bylin v. Billings*, 568 F.3d 1224, 1230 (10th Cir. 2009). *See also Poulos v. Brickley Enters.*, No. 19-2629-JAR, 2020 WL 1812269, at *2 (D. Kan. Apr. 8, 2020) (citation omitted).

In this context, the Court acknowledges Defendants' argument that the proposed amendment "effectively reimagine[s] the litigation as one led by a series of RICO claims instead of the Securities and Exchange Act claims that Plaintiff had previously pleaded and that have been operative since November 2021." Doc. 193, at 2. Even so, the proposed RICO claims arise out of the same subject matter as the claims contained in the initial Complaint. Also, while there are some new factual issues raised, it is undisputed that these issues are based on facts that were ultimately learned by Plaintiff during discovery, not prior to the pendency of this litigation. Accordingly, the Court **GRANTS** Plaintiff's motion.

**IT IS THEREFORE ORDERED** that Plaintiff's motion to amend, Doc. 184, is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff, pursuant to D. Kan. Rule 15.1(b), file their Amended Complaint, in form attached to motion, on or before **May 6, 2024**.

**IT IS FURTHER ORDERED** that Plaintiff immediately effectuate service of process on the newly added Defendants.

**IT IS SO ORDERED**.

Dated April 29, 2024, at Wichita, Kansas.

/s/ BROOKS G. SEVERSON
Brooks G. Severson
United States Magistrate Judge