**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

UMB BANK, N.A., solely in its capacity as
successor trustee for the Bonds,

        *Plaintiff/Counter-Defendant*,

v.                                                                                    Case No. 21-2504-EFM

D. JON MONSON, et al.,

        *Defendants/Counter-Plaintiffs,*

v.

COLLIERS SECURITIES, LLC, et al.,

        *Third-Party Defendants.*

HOWARD YU, solely in his capacity as
trustee of the estate of Anthony John
Jacobson Trust,

        *Plaintiff/Counter-Defendant*,

v.

UMB BANK, N.A., solely in its capacity as
successor trustee for the Bonds,

        *Defendant/Counter-Plaintiff.*

**MEMORANDUM AND ORDER**

In the wake of a failed multi-million-dollar construction project, Plaintiff UMB Bank, N.A.

("UMB") brings several civil claims under the Racketeer Influenced and Corrupt Organization Act

("RICO") and Kansas state law against numerous Defendants. UMB retained Vince Cummings as

an expert witness to calculate the total damages UMB alleges it is entitled to. Defendants[1] bring the present Motion to Exclude the Opinions and Testimony of Vince Cummings (Doc. 413). For the reasons stated below, the Court denies the motion.

## I.    Factual and Procedural Background

The Court laid out the uncontroverted facts in its recent order on six summary judgment motions and incorporates that recitation here.[2] Relevant to this Order, the City of Edwardsville, Kansas issued three revenue bonds to help fund an $80 million development project (the "Project") in October 2019. These bonds included (1) $10,655,000 in transient guest tax revenue bonds ("TGT Bond"); (2) $11,005,000 in special obligation tax increment revenue bonds ("TIF Bond"); and (3) $1,620,000 in two series of community improvement district revenue bonds ("CID Bond") (collectively the "Bonds"). The City issued the Bonds under three trust indentures: the TGT, TIF, and CID Trust Indentures (collectively the "Indentures"), respectively. UMB, as Trustee, holds and administers the Trust Estates pursuant to the Indentures for the Bonds.

The Project officially went awry when a lender, Altos Groups, LLC, failed to fund a Construction Loan required for the Project in March 2020. Litigation ensued shortly afterwards, including this suit filed by UMB on November 11, 2021, seeking damages against Defendants—various parties to the Project's development. UMB seeks damages to make the Trust Estates whole, including applicable proceeds for the Bonds, delinquent interest for the Bonds, and attorneys' fees.

---

[1] Specifically, the moving Defendants include Anthony Jacobson; Robert Boyer; Vernal Bay Capital Group LLC; Vernal Bay Investment LLC; Howard Yu, solely as trustee of the Anthony J. Jacobson Trust; Peak Trust Company, solely as trustee of the Anthony J. Jacobson Trust; and Mutual Credit Corporation, collectively with the other listed Defendants to UMB's claims.

[2] Doc. 468.

To calculate its damages, UMB retained Vincent Cummings as a damages expert. Mr. Cummings is a Certified Public Accountant and a Master Analyst in Financial Forensics who regularly determines the value of financial damages. After assuming Defendants' liability and reviewing relevant documents from the Bonds, Indentures, and other associated accounts, Mr. Cummings reached various sums and calculated UMB's damages in the overarching formula that follows:

| | |
|---|---:|
| Applicable Bond Proceeds | $ 21,895,511 |
| Delinquent Bond Interest | 3,502,653 |
| Principal Redemption | - 3,707,800 |
| Estate Fund Balances | - 2,323,927 |
| Attorneys'/Litigation Costs | - 3,084,741 |
| Sub-Total [6] | 16,281,696 |
| Treble | x 3 |
| | 48,845,089 |
| Attorneys'/Litigation Costs | 3,084,741 |
| Monetary Damages | 51,929,830 |

Defendants now move to exclude Mr. Cummings's opinions and testimony under Rule 702 of the Federal Rules of Evidence.

## II.      Legal Standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of opinion testimony from witnesses qualified as experts by their knowledge, skill, experience, training, or education. Under Rule 702, expert opinion testimony is admissible to assist the trier-of-fact in matters of scientific, technical, or otherwise specialized knowledge provided that such testimony (1) is based upon sufficient facts or data, (2) is a product of reliable principles and methods, and (3) the witness

applied the principles and methods reliably to the facts of the case.[3] As these requirements demonstrate, the court is charged as a gatekeeper to admit only expert testimony that is relevant and reliable.[4] Consideration of proffered expert testimony is a flexible inquiry specific to the facts of the case at bar.[5]

### III.    Analysis

Defendants do not attack Mr. Cummings's general qualifications or the reliability of his opinions. Rather, Defendants assert Mr. Cummings's testimony is unhelpful to the jury and may be unduly relied upon if permitted. Under Rule 702(a), UMB must demonstrate that it is more likely than not that Mr. Cummings's "scientific, technical, or otherwise specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue."[6] Defendants attack the helpfulness of Mr. Cummings's testimony on two fronts.

First, Defendants argue Mr. Cummings's opinions are unhelpful because he employed basic math from readily attainable numbers that the jury can perform on its own. This argument lies in the distinction between lay opinion under Rule 701 and expert opinion under Rule 702. For example, a proposed expert's opinion derived from "[a] mathematical calculation well within the ability of anyone with a grade-school education is . . . more aptly characterized as a lay opinion

---

[3] Fed. R. Evid. 702.

[4] *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

[5] *Id.* at 594; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (rejecting formulaic application of reliability factors discussed in *Daubert* because "[t]oo much depends upon the particular circumstances of the particular case at issue").

[6] Fed. R. Evid. 702(a).

under Fed. R. Evid. 701."[7] Conversely, a proposed expert whose opinion "moves beyond basic mathematics by considering advanced topics or by requiring the selection of a mathematic methodology" is categorized under Rule 702 because it falls outside "the realm of common experience" required of lay testimony.[8]

Here, Mr. Cummings's opinion falls outside the realm of common experience attributable to lay witnesses. To Defendants' point, it is true that Mr. Cummings's overarching formula involves simple addition, subtraction, and multiplication. And Mr. Cummings reached several numbers in his formula by taking them directly out of relevant documents, including the number of Applicable Bonds Proceeds, Estate Fund Balances, and Litigation Costs. But Mr. Cummings employed a more advanced method to determine the Delinquent Bonds Interest and Principal Redemption by using the specified interest rates and scheduled interest payments from each Indenture, cross-referencing those figures with account statements to identify paid interest from unpaid interest, all while accounting for a September 2023 principal redemption distribution in the TGT Bond to avoid double counting. That is well beyond the abilities of those with only a grade-school education, particularly since Mr. Cummings navigated numerous documents associated with the Bonds to calculate and identify the sums underlying his overarching formula.[9]

---

[7] *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005).

[8] *United States v. Joseph*, 108 F.4th 1273, 1283 (10th Cir. 2024) (citing *James River Ins. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011); *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004)) (further citations omitted).

[9] *See id.* at 1282–83 (citing *United States v. Draine*, 26 F.4th 1178, 1188 (10th Cir. 2022)) (finding a certified fraud examiner's expert testimony "went well beyond the mathematic analysis permissible for lay witnesses" because, in part, the expert navigated numerous transactions across numerous accounts).

Second, Defendants argue Mr. Cummings's opinions are unhelpful because the underlying numbers and methods he utilizes are not disputed.[10] As already discussed, however, the method Mr. Cummings employed to determine the Delinquent Bonds Interest and Principal Redemption is outside the realm of common experience, even if the method he utilized in doing so is not in dispute. Similarly outside the realm of common experience is identifying which numbers are relevant to calculating damages concerning Bonds, Indentures, and associated accounts, even if the numbers themselves are undisputed. Mr. Cummings's testimony will help the jury distinguish between relevant numbers and irrelevant ones that appear in this document-intensive case. Thus, the Court concludes Mr. Cummings testimony will help the jury navigate the well-established complexity that is this case to determine appropriate damages, if applicable.[11]

Finally, Defendants argue that the jury may give Mr. Cummings's testimony undue weight, particularly because he worked as an FBI special agent from 1991–1994. Although not explicitly invoked, Defendants' argument delves into Rule 403 territory concerning potential prejudicial effects of testimony.[12] Excluding otherwise admissible evidence under Rule 403, including expert

---

[10] Defendants, of course, dispute whether they are liable for damages. Defendants also dispute the reasonableness of the Litigation Costs, but do not dispute that those are the fees charged.

[11] In a footnote to their Reply, Defendants note that Mr. Cummings treated the three Bonds as a single trust estate to reach his final damages calculation and argue that this treatment renders his opinions unhelpful to the jury in navigating the Bonds. Doc. 460 at 4 n.3. Defendants go on to explain how their damages expert, who treats each trust estate as separate and distinct, further demonstrates how Mr. Cummings's testimony is inadmissible. Doc. 460 at 5–6. Defendants may appropriately challenge this concern by presenting their own expert and through cross-examination. *See Daubert*, 509 US. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

[12] *See id.* at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." (quotation marks and citation omitted)).

testimony, "is an extraordinary remedy and should be used sparingly."[13] The Court is unpersuaded that such an extraordinary remedy is necessary here. Concerns over the influence of Mr. Cummings's three-to-four-year career at the FBI from over 30 years ago on the jury—if any arise—may be sufficiently addressed on cross-examination and through limiting arguments.

**IT IS THEREFORE ORDERED** that the Defendants' Motion to Exclude the Opinions and Testimony of Vincent Cummings (Doc. 413) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 3rd day of August, 2026.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[13] *United States v. Medina-Copete*, 757 F.3d 1092, 1106 n.3 (10th Cir. 2014) (citation omitted).