**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

UMB BANK, N.A., solely in its capacity as successor trustee for the Bonds,

*Plaintiff/Counter-Defendant*,

v.

D. JON MONSON, et al.,

*Defendants/Counter-Plaintiffs,*

v.

COLLIERS SECURITIES, LLC, et al.,

*Third-Party Defendants.*

---

HOWARD YU, solely in his capacity as trustee of the estate of Anthony John Jacobson Trust,

*Plaintiff/Counter-Defendant*,

v.

UMB BANK, N.A., solely in its capacity as successor trustee for the Bonds,

*Defendant/Counter-Plaintiff.*

Case No. 21-2504-EFM

**MEMORANDUM AND ORDER**

Before the Court is a Motion for Reconsideration filed by Defendants Howard Yu ("Yu") and Peak Trust Company ("Peak"), trustees of the Anthony John Jacobson Trust (collectively "AJJ Trust") (Doc. 470). AJJ Trust seeks reconsideration of the Court's previous Order denying summary judgment on Counts I, II, and XII of Plaintiff/Counter-Defendant UMB Bank, N.A.

("UMB")'s Amended Complaint. UMB filed no response. For the reasons explained below, the Court denies the Motion.

## I. Legal Standard

The Court has discretion whether to grant a motion to reconsider.[1] The Federal Rules of Civil Procedure do not formally recognize a "motion to reconsider."[2] D. Kan. Rule 7.3 governs motions to reconsider non-dispositive orders, and Fed. R. Civ. P. 59(e) and 60 govern motions to reconsider dispositive orders.[3] The standard is nearly identical under both rules.

A party may seek reconsideration on the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice.[4] A motion to reconsider is available where the court has "misapprehended a party's position, the facts or applicable law, or where the party produces new evidence that it could not have obtained earlier through the exercise of due diligence."[5] Such a motion, however, is "not a second opportunity for the losing party to make its strongest case, to rehash arguments or to dress up arguments that previously failed."[6]

---

[1] *See Hancock v. City of Okla. City*, 857 F.2d 1394, 1395 (10th Cir. 1988).

[2] *See Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).

[3] D. Kan. R. 7.3; *Coffeyville Res. Refin. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010).

[4] D. Kan. R. 7.3; *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)).

[5] *Bedivere Ins. Co. v. Blue Cross & Blue Shield of Kan., Inc.*, 491 F. Supp. 3d 929, 936 (D. Kan. 2020) (citations omitted).

[6] *Id.*

## II. Analysis

This Racketeer Influenced and Corrupt Organizations Act ("RICO") case arises out of a failed multi-million-dollar development project in the City of Edwardsville, Kansas. Relevant here, AJJ Trust executed a Guaranty Agreement required to secure a construction loan for the project. For brevity's sake, the Court incorporates by reference the uncontroverted facts laid out in its previous Order denying AJJ Trust summary judgment on Counts I, II, and XII,[7] with one exception.[8]

In its previous Order, the Court erroneously identified Defendant D. Jon Monson as AJJ Trust's investment trustee. Instead, Yu serves as the AJJ Trust's discretionary trustee and its investment trustee. This misapprehension of fact serves as the first basis for AJJ Trust's Motion. But the Court did not reach its conclusion denying AJJ Trust summary judgment based on Monson's actions. Instead, it reached its conclusion based on AJJ Trust's own actions in executing the Guaranty Agreement at the direction of Defendant Anthony Jacobson—the AJJ Trust beneficiary.[9] Thus, the Court's misidentification of AJJ Trust's investment trustee in the previous Order's facts section does not warrant reconsideration of the Court's denial of summary judgment.

---

[7] Count I is a civil RICO claim under 18 U.S.C. § 1962(c); Count II is a RICO conspiracy claim under 18 U.S.C. § 1962(d); and Count XII is a common law conspiracy claim under Kansas law.

[8] *UMB Bank, N.A. v. Monson*, 2026 WL 2209712, at *2–7 (D. Kan. July 31, 2026); Doc. 468 at 3–14. In citing court documents, the Court utilizes the page number generated by the CM/ECF system rather than the page numbers assigned by the parties.

[9] *UMB Bank, N.A.*, 2026 WL 2209712, at *4–5, *14.

AJJ Trust's second basis underlying its Motion argues that the Court erred in declining to consider one of its arguments as raised for the first time in its reply brief.[10] There, AJJ Trust argued that UMB cannot attribute Jacobson's actions or knowledge to AJJ Trust absent a reverse veil piercing theory, which is not recognized under Kansas law.[11] AJJ Trust asserts it did not raise this argument until its reply because UMB made no attempt to attribute Jacobson's actions to AJJ Trust until its response.

Yet, in its principal brief, AJJ Trust argued that "UMB's theory is that the AJJ Trust must have been part of the enterprise because it executed the Guaranty at Mr. Jacobson's request."[12] Despite recognizing the theory, AJJ Trust failed to raise any argument that Jacobson's actions should not be imputed to it in its principal brief. This failure becomes more pronounced considering AJJ Trust's counsel properly raised the argument regarding another entity Jacobson is connected to that counsel represents. Counsel explains that the different approaches are due to AJJ Trust being a trust whereas the other Defendants are corporate entities. But considering AJJ Trust's counsel would argue reverse veil piercing is inapplicable to all the entity Defendants that Jacobson is connected to, the Court is unpersuaded that the entities' natures are so wholly different to render AJJ Trust's argument timely raised. Thus, the Court is unpersuaded that it erred in declining to consider AJJ Trust's reverse veil piercing argument.

---

[10] *Bentz v. City of Marion*, 776 F. Supp. 3d 951, 987 (D. Kan. 2025) ("Ordinarily, courts don't consider arguments raised for the first time in a reply brief." (citation omitted)).

[11] *See*, *e.g.*, *Bates v. Flemming*, 2022 WL 103240, at *4 (D. Kan. Jan. 11, 2022) ("The Tenth Circuit has held that Kansas has not adopted alter ego liability." (citing *Floyd v. I.R.S. U.S.*, 151 F.3d 1295, 1300 (10th Cir. 1998))); *see also Lemus v. Horizon Exp., Inc.*, 196 P.3d 1232 (Table), 2008 WL 5234543, at *3 (Kan. Ct. App. 2008).

[12] Doc. 414 at 19.

To AJJ Trust's credit, UMB's remaining claims against it are quite tenuous, as the Court recognized in its previous Order.[13] The lack of a response by UMB to this Motion may be telling of that, too, although the Court declines to speculate on UMB's inaction any further. At the end of the day, however, UMB puts forth evidence that AJJ Trust chose to act at Jacobson's direction and enter the Guaranty Agreement despite concerns about the rushed nature of the transaction. And that decision is directly attributable to it, regardless of Jacobson's other actions. As explained in its previous Order, the Court finds that a jury could plausibly infer that AJJ Trust meets the requisite elements to UMB's claims in Counts I, II, and XII based on AJJ Trust's actions. Accordingly, the Court is unpersuaded that it should be the one to permit AJJ Trust to disembark at this time.

**IT IS THEREFORE ORDERED** that AJJ Trust's Motion for Reconsideration (Doc. 470) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 28th day of September, 2026.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

[13] *See UMB Bank, N.A.*, 2026 WL 2209712, at *17 ("Admittedly, UMB's civil RICO claim, premised on wire and financial fraud allegations, is complicated, convoluted, and confusing at times. The RICO Defendants rightly note that UMB's theory requires several inferences, particularly concerning the entity RICO Defendants.").